Joan Harding KING, et al.,
Original Plaintiffs,

v.

Bruce J. GIBBS, Defendant and Cross–Claim Plaintiff–Appellant,

v.

Richard C. BLUM, William Roach, Edward Scarff, Arthur H. Stromberg, William D. Walsh and Advanced Systems, Inc., Defendants and Cross–Claim Defendant–Appellees.

Nos. 88–2668, 88–3441.

United States Court of Appeals,
Seventh Circuit.

Argued April 4, 1989.

Decided June 1, 1989.

John A. Cook, Richard D. Darby, Jr., Chicago, Ill., for defendant and cross-claim plaintiff-appellant.

Joel G. Chefitz, Patrick J. Lamb, Katten Muchin & Zavis, Chicago, Ill., for defendant and cross-claim defendants-appellees.

Before COFFEY, FLAUM, and RIPPLE, Circuit Judges.

FLAUM, Circuit Judge.

In *Heizer Corporation v. Ross*, 601 F.2d 330, 334 (7th Cir.1979), we held that a securities wrongdoer was not entitled under federal law to indemnification for its liabilities. Gibbs, the cross-claim plaintiff, claims that as an innocent defendant, rather than a wrongdoer, the rule of *Heizer* is inapplicable to his case. The district court held that even if Gibbs could prove that he was innocent, and the cross-claim defendants were wrongdoers, he would still have no federal right to indemnification. We agree with the district court that there is *no* right to indemnification under the securities laws or federal common law and, therefore, affirm.

I.

The underlying action in this case was a securities fraud claim in which King and several fellow plaintiffs alleged that the defendants had made material misstatements in connection with the purchase and sale of securities in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5 (1975). The defendants in the underlying action included: Advanced Systems, Inc. (ASI); William Roach, ASI's president; Bruce Gibbs, ASI's controller and assistant treasurer; as well as various members of ASI's board of directors. The action was eventually settled for a substantial amount of money, to be funded entirely by ASI, resulting in all claims against the defendants being dismissed with prejudice.

During the pendency of the underlying action, Gibbs filed cross-claims against the other defendants alleging that he was an innocent conduit of false information transmitted by the defendants to the underlying plaintiffs. Gibbs prayed for contribution,

indemnification for the money Gibbs expended in defending the underlying action,[1] and for damages based on pendent state claims for retaliatory discharge, constructive discharge, and intentional infliction of emotional distress.

The cross-claim defendants moved to dismiss Gibbs' contribution and indemnification cross-claims for failure to state a ground upon which relief could be granted. The cross-claim defendants argued that the contribution count should be dismissed because no possibility existed that Gibbs would have to pay damages to the underlying plaintiffs given ASI's agreement to satisfy the amount of the settlement. The district court agreed and dismissed the cross-claim for contribution with prejudice. Gibbs does not appeal that decision. The district court also dismissed the indemnification claim with prejudice. Citing only *Heizer*, 601 F.2d at 330, the court held that there is no right to indemnification under the federal securities laws. With all of Gibbs' federal claims dismissed, the court proceeded to dismiss without prejudice the pendent state claims. Gibbs now appeals the dismissal of his cross-claim for indemnification and his pendent state claims. We affirm.

## II.

Initially, we must determine whether we have jurisdiction over this appeal. The cross-claim defendants have objected to our jurisdiction on the grounds that Gibbs has not appealed from a final judgment entered pursuant to Rule 58 of the Federal Rules of Civil Procedure or from an interlocutory decision certified by the district court under Rule 54(b). 28 U.S.C. § 1291 gives us jurisdiction over an appeal only if the district court has rendered a "final decision." According to the cross-claim defendants, without a Rule 58 judgment or a Rule 54(b) certification, there is no "final decision" of the district court from which Gibbs can properly appeal to give us jurisdiction.[2]

The district court orally granted the cross-claim defendants' Motion to Dismiss Gibbs' Cross–Claims for failure to state a ground upon which relief could be granted on July 27, 1988. At that time the court had not yet granted final approval to the settlement of the underlying claims and, thus, the court's order was interlocutory in nature. Such an order can be a final decision only if the specific procedural requirements of Rule 54(b) are satisfied. *Ohio–Sealy Mattress Mfg. Co. v. Duncan*, 714 F.2d 740, 743 (7th Cir.1983) ("The final disposition of one claim in a multi-count complaint is not final within the meaning of section 1291 unless the district court certifies it for direct appeal under FED.R.CIV. PRO. 54(b)."). Since everyone agrees that the requirements of Rule 54(b) were not satisfied, the July 27 order was not a final decision for purposes of § 1291.[3]

The district court granted final approval to the underlying settlement on August 22, 1988, in an order which it denominated "Final Judgment And Order Approving Settlement." No mention was made in the order of Gibbs' cross-claims and the order neither was denominated a Rule 58 final judgment nor met the requirements of a Rule 58 judgment since it did not state "the fact that the plaintiff [Gibbs] has been denied all relief." *Reytblatt v. Denton*, 812

---

**1.** The underlying defendants, including Gibbs, were represented in the *King* action by ASI's corporate counsel. Shortly after the underlying complaint was filed, however, Gibbs decided to retain independent counsel on the theory that his interests were potentially adverse to those of ASI and the other defendants. It is for the expenses Gibbs incurred in defending the underlying action, including his attorney's fees, that he seeks indemnification.

**2.** We recognize that a *final judgment* under Rule 58 is not a prerequisite to our jurisdiction under § 1291 since, under some circumstances, the final judgment requirement of Rule 58 can be waived. *See Bankers Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978). Given the cross-claim defendants' objections to our jurisdiction, however, that requirement has not been waived, and therefore our jurisdiction depends upon a finding that the district court has entered a final judgment pursuant to Rule 58 or has certified the appeal pursuant to the requirements of Rule 54(b).

**3.** No claim has been made that the July 27 order was appealable under 28 U.S.C. § 1292.

F.2d 1042, 1044 (7th Cir.1987). Thus, as of August 22, no proper final decision had been entered on Gibbs' cross-claims.

Nevertheless, on August 25, 1988, Gibbs filed a notice of appeal of the district court's July 27 order. In the course of briefing the appeal, the cross-claim defendants objected to appellate jurisdiction arguing that the July 27 order was not a final judgment pursuant to either Rule 58 or Rule 54(b) and, therefore, the appellate court had no jurisdiction over the appeal. Gibbs then returned to the district court to attempt to perfect the posture of the case for appeal.

On December 15, 1988, the district court entered an order entitled "Rule 58 final judgment," which dismissed Gibbs cross-claims *nunc pro tunc* as of August 22. The district court's order corrected its failure to enter a Rule 58 judgment with regard to Gibbs on August 22. The December 15 order rectified that problem because it explictly stated that Gibbs' cross-claims were dismissed *nunc pro tunc* as of August 22. The cross-claim defendants argue, however, that there are still two jurisdictional problems.

First, the cross-claim defendants argue that the August 22 order is irrelevant because Gibbs has only appealed from the July 27 order. We agree that Gibbs has only purported to appeal from the July 27 order but we do not find this dispositive of our jurisdiction. We have jurisdiction to consider an appeal from a non-final judgment where a subsequent judgment effectively terminates the litigation. *Rivers v. Washington County Board of Education*, 770 F.2d 1010, 1011 (11th Cir.1985); *Sandidge v. Salen Offshore Drilling Company*, 764 F.2d 252, 255 (5th Cir.1985); *Anderson v. Allstate Insurance Company*, 630 F.2d 677, 680–81 (9th Cir.1980).[4] In this case, the order of August 22 effectively terminated the litigation and thus we can consider the appeal from the non-final July 27 judgment of the district court dismissing Gibbs' cross-claims.

4. Rule 4(a)(4) of the Federal Rules of Appellate Procedure states that a notice of appeal filed before the disposition of various motions has no

■ Second, the cross-claim defendants contend that once Gibbs filed his notice of appeal, the district court was without jurisdiction to enter its December 15 *nunc pro tunc* order. By making this argument, the cross-claim defendants put themselves in the anomalous position of arguing that after the August 25 notice of appeal, neither the district court nor the court of appeals had jurisdiction over this action. In fact, jurisdiction remained in the district court because Gibbs' notice of appeal was ineffectual until the district court entered its December 15 order. *See Local P–171, Amalgamated Meat Cutters and Butcher Workmen of North America v. Thompson Farms Company*, 642 F.2d 1065, 1073 (7th Cir.1981) (district court had jurisdiction to add Rule 54(b) certification *nunc pro tunc* after filing of premature notice of appeal); *United States v. Hitchmon*, 602 F.2d 689, 694 (5th Cir.1979) (en banc); *Ruby v. Secretary of United States Navy*, 365 F.2d 385, 388 (9th Cir.1966). We agree with the statement of the court in *Ruby* that "[i]f, by reason of defects in form or execution, a notice of appeal does not transfer jurisdiction to the court of appeals, then such jurisdiction must remain in the district court; it cannot float in air." 365 F.2d at 388 (premature notice of appeal is a notice "defective in form or execution"). Thus, until December 15, when the notice of appeal became effective by virtue of the *nunc pro tunc* order, jurisdiction of this action remained in the district court.

In sum, we find that any defect in the jurisdiction of this court was corrected by the district court's *nunc pro tunc* order and we may reach the merits of the appeal.

## III.

■ Gibbs' cross-claim seeks indemnification for the expenses he incurred in defending the underlying lawsuit. Those expenses are recoverable from the cross-claim defendants, Gibbs asserts, because the expenses would have been unnecessary but for the wrongdoing of the cross-claim

effect. Because none of the motions mentioned in the rule are at issue in this case, the rule does not mandate a contrary result.

defendants. Gibbs intends to prove that the cross-claim defendants were wrong-doers and that he was simply an innocent conduit of the false information supplied by the cross-claim defendants.

To be successful on his cross-claim, Gibbs must show that he has a right to indemnification under federal law.[5] It is beyond dispute that indemnification is not explicitly permitted by Section 10(b)[6] or Rule 10b–5,[7] which themselves contain no express private right of action. Indeed, indemnification is nowhere explicitly mentioned as a remedy available under the Securities Exchange Act of 1934. Thus, indemnification will be available in this case only if such a right can be implied under the statute or rule or is available as a matter of federal common law. *Texas Industries, Inc. v. Radcliff Materials,* 451 U.S. 630, 638, 101 S.Ct. 2061, 2065, 68 L.Ed. 2d 500 (1981). We will discuss each of those possibilities in turn.

### A.

Initially, we must determine what standard of analysis we are to use to decide whether to imply this right of action. Once a court has recognized an implied private right of action, as we have done in the context of § 10(b) and Rule 10b–5, following the lead of the Supreme Court, *see, e.g., Peoria Union Stock Yards Company Retirement Plan v. Penn Mutual Life Insurance Company,* 698 F.2d 320, 323 (7th Cir.1983), the court then has broad "flexibility and discretion" in determining the remedies available under that cause of action. Schneider, *Implying Rights and Remedies Under the Federal Securities Laws,* 62 N.C.L.Rev. 853, 858–59 (1984) ("[T]he need to show legislative authorization or intent is much greater when a federal court wishes to hold that a right of action exists than when it wishes to grant a particular remedy."). In *J.I. Case Company v. Borak,* 377 U.S. 426, 433–34, 84 S.Ct. 1555, 1560–61, 12 L.Ed.2d 423 (1964), the Court, quoting *Deckert v. Independent Shares Corp.,* 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940), stated that "the power to make the right of recovery effective implies the power to utilize any of the procedures or actions normally available to the litigant according to the exigencies of the particular case." *See also Heizer v. Ross,* 601 F.2d 330, 332, 333 n. 6 (7th Cir.1979).

**5.** Gibbs also claims that he is entitled to indemnification under Delaware state law. The cross-claim defendants allege that Gibbs has waived any reliance on state law as a basis for indemnification because he failed to rely on state law in the district court. Gibbs, in his brief before this court, countered that he did base his indemnification claim alternatively on state law when he stated, in his brief opposing the defendants' motion to dismiss his cross-claims, that "Cross-claimant's claim for indemnification has a basis under Illinois common law."

There are at least two problems with Gibbs' argument. First, Gibbs contention on appeal, unlike the passage he cites from his brief below, is that he is entitled to indemnification under Delaware law. Gibbs cites no instance where he informed the district court that he relied on Delaware law as a basis for his indemnification claim. Second, Gibbs admitted at oral argument before this court that, indeed, he did not press the state law claim before the district court.

**6.** Section 10 states that:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national security exchange

. . . .

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

**7.** Rule 10b–5 states that:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any national securities exchange

(1) to employ any device, scheme, or artifice to defraud,

(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

This broad "flexibility and discretion" assumes, though, that the remedy is simply ancillary to the cause of action already implied and does not create any independent substantive rights. However, an implied right to indemnification would not simply be an adjunct to the § 10(b) and Rule 10b–5 cause of action but rather would serve as a source of independent substantive rights. For example, implying a right to indemnification would necessarily expand the category of possible plaintiffs to include parties who neither purchased nor sold securities, a requirement of Rule 10b–5 actions. Also, the implication of a right to indemnification in this case, unlike the addition of a new remedy such as rescission or punitive damages, would give the court subject matter jurisdiction it would not otherwise have. Thus, because recognizing indemnification would give plaintiffs additional substantive rights, we believe the standard for creation of the cause of action should be the same standard as that used to imply any other private right of action, not the flexible and discretionary standard used to imply new remedies. *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975). To the extent this approach differs from the approach we took in *Heizer v. Ross*, 601 F.2d at 333 n. 6, where the issue was the implication of the right to contribution under § 10(b), we now disavow that analysis.[8]

The Supreme Court, in *Cort v. Ash*, set out a four-part test to determine whether a private right of action should be implied from a statute:

> First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," ... ? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. at 78, 95 S.Ct. at 2088 (citations omitted).

In its recent pronouncements, the Court has reaffirmed the use of the *Cort* test but has also made it clear that the principal focus is on the second of the *Cort* factors— whether the legislature intended to create a private cause of action. *See Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979). The first and third of the *Cort* factors are aids in determining that intent, *Touche Ross*, 442 U.S. at 575–76, 99 S.Ct. at 2488–89; *see also* P. Bator, D. Meltzer, P. Mishkin, D. Shapiro, *The Federal Courts and the Federal System* 946 (1988), and, by negative implication, it is unclear whether the fourth *Cort* factor—whether the cause of action is generally thought of as a matter of state concern—has any continuing significance. *But see Merrill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353, 393, 102 S.Ct. 1825, 1847, 72 L.Ed.2d 182 (1982) (Court noted that fourth *Cort* factor favored implying private right of action under a provision of the Commodities Exchange Act.). In sum, unless a congressional intent to create the

---

8. *Heizer* itself was internally inconsistent in its characterization of the right to contribution. Initially, we stated that the right to contribution is only "ancillary" to the existing cause of action under § 10(b). 601 F.2d at 333 n. 6. Thus, we did not utilize the *Cort* factors to determine whether an implied right to contribution exists under the federal securities laws. Later in the opinion, however, we stated that implying a right to contribution would give a plaintiff additional "substantive right[s]." *Id.* at 334. It is hard to see how a cause of action which grants a plaintiff substantive rights can be called "ancillary" to the cause of action under § 10(b).

We also note that *Heizer* was decided before *Texas Industries*, 451 U.S. at 629, 101 S.Ct. at 2061, and *Northwest Airlines, Inc. v. Transport Workers Union of America*, 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981). In both of those cases the Supreme Court employed the modified *Cort* standard, rather than the "flexibility and discretion" standard adopted by *Heizer*, to analyze the question of whether a right to contribution should be implied under two statutes that contained express causes of action.

right of action "can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 94, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981).

In this case, there is nothing in the language of Section 10(b) or Rule 10b–5 from which the right to indemnification can be inferred. Nowhere in these provisions is indemnification mentioned; not a surprising fact given that the provisions create no express private rights of action. Neither can the statutory language or the language of the rule be read to imply a right to indemnification. While the language of the statute and the rule vary considerably, both are focused on prohibiting the manipulative and deceptive securities practices that were believed to have precipitated the stock market collapse of 1929. The statute simply outlaws the manipulative and deceptive practices and the rule attempts to define what those practices are; neither gives any indication, express or implied, of where ultimate financial responsibility for the use of those practices should lie. Thus, we cannot infer from the language of Section 10(b) or Rule 10b–5 a congressional intent to permit indemnification of those who were either alleged to have engaged in the deceptive and manipulative practices or those who have been proven guilty of utilizing such practices.

Nor is there any indication in the extensive legislative history surrounding the 1934 Act that Congress intended that indemnification be available under the statute.[9] In our search of the legislative history we have found no indication that the subject of indemnification was even discussed; a result which corresponds with that reached by the only other reported decision to have canvassed the legislative history on this issue. *See In re Olympia Brewing Company Securities Litigation,* 674 F.Supp. 597, 612 (N.D.Ill.1987). In sum, there is no evidence in the language of the statute or rule or their legislative histories to indicate that Congress intended to create a private cause of action for indemnification.

It is also clear from the brief analysis above that the statute was not enacted for the especial benefit of those parties who would seek indemnification. The concern of the drafters was with those people who would be the victims of the manipulative and deceptive practices outlawed by the statute, *i.e.* investors. *See Sutter v. Groen,* 687 F.2d 197, 201 (7th Cir.1982). Those investor/victims are not in the class of people who would seek indemnification were such a right available. Only corporate officers and directors found liable of violating the statute, officers and directors who expended money successfully defending suits brought under the statute, and the corporations themselves would seek indemnification. There is no indication that the drafters of the statute or rule were at all concerned with those particular parties and certainly did not enact the statute for their "especial benefit."

At this point, the Supreme Court has held that there is no need to go further with the *Cort* factors. *California v. Sierra Club,* 451 U.S. 287, 298, 101 S.Ct. 1775, 1781, 68 L.Ed.2d 101 (1981); *Texas Industries,* 451 U.S. at 639–40, 101 S.Ct. at 2066–67. In *California v. Sierra Club,* the Court was faced with the question of whether a private cause of action could be implied under the Rivers and Harbors Appropriation Act. The Court first found that the statute in question was enacted to benefit the public at large and was not enacted for the especial benefit of any class. *Id.* 451 U.S. at 294–95, 101 S.Ct. at 1779–80. The Court then found that there was no indication in the legislative history or elsewhere that Congress intended to create a private right of action. At that point the Court stated that "it is unnecessary to inquire further to determine whether the purpose of the statute would be advanced by judicial implication of a private cause of

---

**9.** The legislative history of the 1934 Act is set out in detail in a multi-volume work compiled by J.S. Ellenberger and Ellen P. Mahar entitled *Legislative History of the Securities Act of 1933 and Securities Exchange Act of 1934* (1973).

action or whether such a remedy is within the federal domain of interest. These factors are only of relevance if the first two factors give indication of congressional intent to create the remedy." *Id.* at 298, 101 S.Ct. at 1781.

In this case, like *California v. Sierra Club*, the first two factors give no indication that Congress intended to create a private cause of action for indemnification. Thus, the first two factors are dispositive and we will not imply a private cause of action for indemnification under the statute or rule.[10]

#### B.

If there is no implied right to indemnification under the securities laws then the only other possible federal source of the right is federal common law. Since *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), every first year law student has been told that there is no general federal common law. Instructors are quick to add, however, that federal common law still has a role to play in special situations.[11] There are essentially two such situations in which federal common law has vitality: where "a federal rule of decision is 'necessary to protect uniquely federal interests,'" and where "Congress has given the courts the power to develop substantive law." *Texas Industries*, 451 U.S. at 640, 101 S.Ct. at 2067 (quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 426, 84 S.Ct. 923, 939, 11 L.Ed.2d 804 (1964)). The right to indemnification falls into neither of those categories.

Uniquely federal interests have given rise to federal common law in such areas as "the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases." *Id.* 451 U.S. at 641, 101 S.Ct. at 2067 (footnotes omitted). The right to indemnification is obviously unrelated to such areas of the law. The federal government has no conceivable stake in the indemnification of corporate officers and directors and the distribution of power in the federal system is not implicated. Also, unlike admiralty, indemnification is not an area "long recognized as subject to federal common law." *Id.* at 642, 101 S.Ct. at 642.

Indemnification is also not an area where Congress has specifically given the federal courts authority to create common law. The best example of such an area is labor law where the Supreme Court has interpreted § 301 of the Labor Management Relations Act to grant the courts power to make substantive law. *See Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). There is no indication that Congress has made a similar grant of power to the federal courts in the area of indemnification. In sum, there is no compass within federal common law for the recognition of a right to indemnification in the context of a securities case.

#### IV.

The result we reach in this case is consistent with the only other circuit court cases dealing with the question of indemnification in the context of the federal securities laws. *Heizer v. Ross*, 601 F.2d 330, 334 (7th Cir.1979); *Stowell v. Ted S. Finkel Investment Services, Inc.*, 641 F.2d 323, 325 (5th Cir.1981); *Laventhol, Krekstein,*

---

**10.** We note that the third factor mentioned in *Cort,* whether implication of the right is consistent with the purpose of the statute, would be of little help to Gibbs' position. The purpose of § 10(b) was to serve "as a catchall clause to prevent fraudulent practices." *Chiarella v. United States,* 445 U.S. 222, 226, 100 S.Ct. 1108, 1113, 63 L.Ed.2d 348 (1980). It is difficult to see how a right to indemnification for even innocent persons would serve the deterrent function which underlies the statute. Those innocent parties who would qualify for indemnification, because they lack the scienter required by the rule, *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), cannot be found liable for damages. Thus, a right to indemnification would have no affect on their conduct and would not serve the deterrent function of the statute.

**11.** For an excellent discussion of the phenomenon of federal common law see Friendly, *In Praise of Erie—and of the New Federal Common Law,* 39 N.Y.U.L.Rev. 383 (1964).

*Horwath & Horwath v. Horwitch,* 637 F.2d 672, 676 (9th Cir.1980).[12] In all of those cases the courts rested their decisions on policy considerations. As our discussion above indicates, however, policy analysis has no role to play in the question of whether there is a federal right to indemnification.[13] There is simply no congressional intent to create a right to indemnification under Section 10(b) and we have no common law power to recognize the right. While we sympathize with the position in which Gibbs claims he was placed by virtue of his superiors' actions, we must answer that it is of no moment under federal law. The district court's decision to dismiss the indemnification claim for failure to state a claim upon which relief can be granted was correct.

The district court was also correct to dismiss without prejudice Gibbs' pendent state claims. Where all federal claims have been dismissed prior to trial, the district court judge acts well within his discretion in dismissing pendent state claims without prejudice. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Graf v. Elgin, Joliet and Eastern Ry. Co.,* 790 F.2d 1341, 1347 (7th Cir.1986).

## V.

For all the reasons discussed above, the judgment of the district court is AFFIRMED.

---

**12.** The only circuit court case which did recognize a right to indemnification, explicitly did so under non-federal law. *Koch Industries, Inc. v. Vosko,* 494 F.2d 713, 725 (10th Cir.1974) (indemnification under Bahamian law).

**13.** Although some commentators have stated that implying rights of action under federal statutes and federal common law is usually a matter of policy rather than of power, *e.g.,* Field, *Sources of Law: The Scope of Federal Common Law,* 99 Harv.L.Rev. 881 (1986), the Supreme Court has discussed these issues in terms of the *power* of the federal courts. *Texas Industries,* 451 U.S. at 638, 101 S.Ct. at 2065.