RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0375p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

_____

TODD J. DELAY,

            *Plaintiff-Appellant,*

    *v.*

ROSENTHAL COLLINS GROUP, LLC,

              *Defendant-Appellee.*

No. 08-4557

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 07-00568—James L. Graham, District Judge;
Norah McCann King, Magistrate Judge.

Argued: October 8, 2009

Decided and Filed: October 27, 2009

Before: SUTTON, KETHLEDGE, and WHITE, Circuit Judges.

_____

**COUNSEL**

_____

**ARGUED:** James G. Vargo, JAMES E. ARNOLD & ASSOCIATES, LPA, Columbus, Ohio, for Appellant. Jeffrey A. Schulman, WOLIN, KELTER & ROSEN, LTD., Chicago, Illinois, for Appellee. **ON BRIEF:** James G. Vargo, JAMES E. ARNOLD & ASSOCIATES, LPA, Columbus, Ohio, for Appellant. Jeffrey A. Schulman, WOLIN, KELTER & ROSEN, LTD., Chicago, Illinois, for Appellee.

_____

**OPINION**

_____

KETHLEDGE, Circuit Judge. Todd Delay filed this suit against his former employer, Rosenthal Collins Group, LLC (RCG), seeking indemnification for legal expenses incurred in successfully defending a prior suit brought against him under the Commodities Exchange Act (CEA), 7 U.S.C. § 1 *et seq.* The district court dismissed Delay's claim, finding it preempted by federal law. We respectfully disagree, and thus vacate and remand.

1

I.

According to Delay's complaint, RCG is a "futures commission merchant," *see* 7 U.S.C. § 1a(20), operating numerous trading desks on the floor of the Chicago Board of Trade and the Chicago Mercantile Exchange.  Beginning in 2002, Delay worked as the manager of RCG's branch office in Columbus, Ohio.

Delay was fired from that job in September 2005.  Soon thereafter, the Commodity Futures Trading Commission (CFTC) filed a civil complaint against Delay in federal court, alleging he had violated several provisions of the CEA.  Delay eventually prevailed in that suit after a bench trial.

Delay thereafter commenced this suit against RCG in Ohio state court, asserting two claims for relief.  First, Delay sought indemnification for his expenses in defending against the CFTC's claims, alleging that the claims involved conduct in his capacity as an employee of RCG.  Second, Delay claimed that RCG had breached his employment contract by failing to provide ninety days' notice before terminating him.

RCG removed the case to federal court on diversity grounds and then moved to dismiss both claims.  The district court granted the motion as to Delay's indemnification claim, but denied it as to his contractual one.  The district court later denied Delay's motion to reconsider that decision.  The parties thereafter settled the contractual claim, which accordingly was voluntarily dismissed with prejudice.  That cleared the way for Delay to bring this appeal.

II.

We first address the issue of subject-matter jurisdiction.  "[E]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,' even though the parties are prepared to concede it." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934)).  Discharging that obligation requires some work here.

RCG's notice of removal said that Delay is a citizen of Ohio and that RCG is a limited liability company organized under the laws of Illinois, with its principal place of business in Illinois.  Delay's jurisdictional statement under Federal Rule of Appellate

Procedure 28(a)(4) told the same story.  For its part, RCG failed to include a jurisdictional statement in its brief at all, thereby indicating that RCG was not dissatisfied with the one contained in Delay's.  *See* Fed. R. App. P. 28(b).

But RCG should have been dissatisfied.  The parties erred in assuming that a limited liability company, like a corporation, is a citizen of its states of organization and principal place of business.  The general rule is that all unincorporated entities—of which a limited liability company is one—have the citizenship of each partner or member.  *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 187-92 (1990).  Accordingly, we held in an unpublished decision that a limited liability company has the citizenship of each of its members.  *See Homfeld II, L.L.C. v. Comair Holdings, Inc.*, 53 F. App'x 731, 732-33 (6th Cir. 2002).  And we so hold today.  In doing so, we join every other circuit that has addressed this issue.  *See Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51, 54-55 (1st Cir. 2006); *Handelsman v. Bedford Vill. Assocs. P'ship*, 213 F.3d 48, 51-52 (2d Cir. 2000); *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 120 (4th Cir. 2004); *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008); *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998); *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007); *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006); *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004).

The result is that RCG's jurisdictional allegations, and Delay's jurisdictional statement on appeal, were deficient.  When diversity jurisdiction is invoked in a case in which a limited liability company is a party, the court needs to know the citizenship of each member of the company.  And because a member of a limited liability company may itself have multiple members—and thus may itself have multiple citizenships—the federal court needs to know the citizenship of each "sub-member" as well.  *See Hicklin Eng'g L.C. v. Bartell*, 439 F.3d 346, 347-48 (7th Cir. 2006).  Indeed, if even one of RCG's members—or one member of a member—were a citizen of Ohio, then complete diversity, and with it federal jurisdiction, would be destroyed.  *See Caudill v. N. Am. Media Corp.*, 200 F.3d 914, 916 (6th Cir. 2000).

Thus we directed RCG to submit a jurisdictional statement identifying the citizenship of all of its members. RCG's response assures us that none of RCG's members is a citizen of Ohio. The parties are thus completely diverse, and we have jurisdiction over the case.

III.

We review *de novo* a district court's dismissal of a claim under Rule 12(b)(6). *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 377 (6th Cir. 2009). In doing so, we accept as true all non-conclusory allegations in the complaint and determine whether they state a plausible claim for relief. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009).

A.

The district court held that the CEA preempts any state-law right to indemnification for expenses incurred in defending against a CEA claim—even if the defense was successful. Delay has abandoned any claim that federal law affirmatively provides him with an indemnification right, but argues that the district court erred in holding that federal law preempts his indemnification claims under state law.

There is some general support for the district court's position, albeit by way of analogy to federal securities law. The Fourth Circuit has held that state-law indemnification claims for expenses relating to federal securities-law violations are preempted, at least as to wrongdoers. *See Baker, Watts & Co. v. Miles & Stockbridge*, 876 F.2d 1101, 1108 (4th Cir. 1989). The Second, Third, and Ninth Circuits have likewise held that state-law indemnification claims for federal securities-law liability are incompatible with the policies behind the federal law, at least as to wrongdoers. *See Globus v. Law Research Serv., Inc.*, 418 F.2d 1276, 1288-89 (2d Cir. 1969), *Eichenholtz v. Brennan*, 52 F.3d 478, 483-85 (3d Cir. 1995); *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1232 (9th Cir. 1989). Other decisions have rejected indemnification for securities-law liability without specifying whether the indemnification claim was asserted under state or federal law. *See, e.g., Heizer Corp. v. Ross*, 601 F.2d 330, 334-35 (7th Cir. 1979). These cases generally reason that indemnification would "tend[] to frustrate and defeat" the policies of the securities laws, and that "[a] securities wrongdoer should not be permitted to escape loss by shifting his entire

responsibility to another party." *Id.* at 334; *see also Baker, Watts & Co.*, 876 F.2d at 1108 ("[I]t would run counter to the basic policy of the federal securities laws to allow a securities wrongdoer . . . to shift its entire responsibility for federal violations on the basis of a collateral state action for indemnification").

The predicate for that reasoning, however, is that the party seeking indemnification is a "wrongdoer." The CFTC failed to prove that Delay was a wrongdoer here. Thus, even if we were persuaded by the analogy to securities law, we do not think that allowing Delay to enforce a state-law indemnification right would "tend[] to frustrate and defeat" the CEA's purposes. *Heizer Corp.*, 601 F.2d at 334. As the Tenth Circuit concluded in the securities-law context, we "find no policy contrary to an award to a party for legal expenses in successfully defending" a CEA claim. *Koch Indus., Inc. v. Vosko*, 494 F.2d 713, 725 (10th Cir. 1974).

But RCG cites not only frustration and defeat in seeking preemption here. It argues as well that preempting Delay's claim would affirmatively *advance* the CEA's purposes. That may well be true—but only in the sense that platinum (a heavier metal) makes a better paperweight than iron does. It appears likely enough that, if people know they cannot obtain indemnification after even a successful defense against a CEA claim, they might be more careful than otherwise to comply with the statute. But that benefit appears marginal at best; and it would come at a disproportionately high cost as measured against the policies supporting any state-law rights of indemnification. Meanwhile, the CEA itself says nothing about indemnification. We conclude, therefore, that Congress did not intend to displace the state-law indemnification rights, if any, of parties found *not* to have violated the CEA.

Contrary to RCG's suggestion, our conclusion does not conflict with the Seventh Circuit's decision in *King v. Gibbs*, 876 F.2d 1275 (7th Cir. 1989). Although the court there did hold that a securities-fraud defendant could not obtain indemnification even if he could show that he was innocent of any wrongdoing, *see id.* at 1278-83, its decision was limited to the question whether federal law *affirmatively* supplied a cause of action for indemnification. Because the defendant had waived his state-law indemnification claim, *see id.* at 1279 n.5, the court did not address the preemption question presented here. Moreover, the *King* court's observation that "[t]he federal government has no conceivable stake in the

indemnification of corporate officers and directors," *id.* at 1282, is entirely consistent with our conclusion that the CEA does not displace state law governing whether an innocent defendant is entitled to indemnification.

B.

Our holding that federal law does not preempt a state-law indemnification right says nothing about whether the right exists in the first place. The district court did not address this issue in its opinion dismissing Delay's indemnification claim; and we read its opinion denying his motion for reconsideration not to have addressed the issue either.

The issue whether Delay can state an indemnification claim under state law appears to be a complex one. There is first the question whether Ohio or Illinois law should apply under Ohio's choice-of-law rules, *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)—a question as to which neither party ventures an answer on appeal. Moreover, regardless of which State's law applies, difficult questions await, such as whether Delay can invoke the mandatory indemnification right conferred on employees of limited liability companies by Ohio Rev. Code § 1705.32, or the implied indemnification right sometimes read into employment contracts under the common law. *See Johnston v. Suckow*, 370 N.E.2d 650, 653 (Ill. App. Ct. 1977); Restatement (Third) of Agency § 8.14 cmt. d (2006). We think the best course is to allow the district court to analyze these issues in the first instance.

The district court's judgment is vacated, and the case remanded for further proceedings consistent with this opinion.