RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0131p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

RICKY DAVIS,

        *Plaintiff-Appellant*,

    *v.*

No. 10-2690

PRISON HEALTH SERVICES;
MS. SCHARFNAAR; OFFICER KAST;
LIEUTENANT DECLINE; JOHN DOE[S],

        *Defendants-Appellees*.

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:10-cv-969—Robert Holmes Bell, District Judge.

Argued: April 18, 2012

Decided and Filed: May 10, 2012

Before: GIBBONS and SUTTON, Circuit Judges; DUGGAN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Joshua A. Block, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, New York, New York, for Appellant. Kevin R. Himebaugh, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees. **ON BRIEF:** Joshua A. Block, Leslie D. Cooper, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, New York, New York, Michael J. Steinberg, Kary L. Moss, AMERICAN CIVIL LIBERTIES UNION OF MICHIGAN, Detroit, Michigan, Miriam J. Aukerman, AMERICAN CIVIL LIBERTIES UNION OF MICHIGAN, Grand Rapids, Michigan, for Appellant. Thomas L. Leonard, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees.

---

[*]The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

_____

**OPINION**

_____

JULIA SMITH GIBBONS, Circuit Judge.   Plaintiff-appellant Ricky Davis brought this *pro se* action against defendants-appellees Prison Health Services, Health Unit Manager (unknown) Scharfnaar, Public Works Supervisor (unknown) Decline, Corrections Officer (unknown) Kast, and "John Doe[s]," alleging that he was improperly removed from his employment in a prison public-works program because of his sexual orientation.  The district court dismissed the complaint for failure to state a claim under 28 U.S.C. §§ 1915(e)(2), 1915A and 42 U.S.C. § 1997e(c), finding that Davis had failed to allege that he was treated differently from other similarly-situated prisoners and that his claim was barred by the Supreme Court's decision in *Engquist v. Oregon Department of Agriculture*.  For the reasons that follow, we reverse the district court's decision and remand the case for further proceedings.

I.

Ricky Davis, who was an inmate at the Florence Crane Correctional Facility in Coldwater, Michigan at the time the underlying events took place, filed a *pro se* complaint against the defendants on October 4, 2010.  Davis claimed that he was removed from his public-works employment because of his sexual orientation, in violation of his rights under the Equal Protection Clause of the Fourteenth Amendment.[1] The complaint and attached exhibits contained the following alleged facts in support of this claim.

Davis is an insulin-dependent diabetic, who was hired to participate in an off-site public-works program administered by the prison.  He was screened and medically cleared for this assignment by prison health officials.  Although there were other insulin-dependent diabetic inmates who participated in the public-works program, Davis claimed

---

[1]Davis also claimed that the defendants violated his First Amendment rights by retaliating against him, but he does not challenge the dismissal of this claim on appeal.

that he was the only gay person in the program. Moreover, he alleged that because of his sexual orientation, the public-works officers supervising his work crew treated him differently than other inmates, ridiculed and belittled him, and "ma[d]e a spectacle" of him when they brought him back to the correctional facility after a public-works assignment. He further alleged that these officers did not want to strip search him because he was a homosexual and that they would make "under the breath" remarks when selected to do so.

Prison Health Services provided the public-works officers supervising off-site work crews with packets of honey in case a diabetic prisoner experienced low blood sugar while working. On December 2, 2009, Davis was working in an off-site detail of the public-works program when he complained that he thought he was suffering from low blood sugar. Defendant Officer Kast allegedly refused to hand a honey packet directly to Davis but instead handed the packet to another inmate to give to Davis—an act that Davis felt evinced an animus toward or discomfort with him as an openly gay man.[2] After receiving the honey, Davis asserts that he returned to work and finished the remainder of his shift. Defendant Lieutenant Decline had Davis fill out a medical health care request and meet with a nurse upon his return to the correctional facility.

Davis claimed that the nurse who examined him determined that his blood sugar levels were normal and that the episode had been a "false alarm." Despite this fact and the fact that he had never previously experienced a low blood sugar episode while on a public-works assignment, the prison health unit manager, Defendant Scharfnaar, ordered that Davis be removed from the public-works program. Scharfnaar reportedly told Davis that he was being removed because he was a diabetic and that she "wasn't going to be responsible if something happened to [Davis] while [he was] out on work assignment." Davis alleged that the public-works officers persuaded Scharfnaar to use concerns about

---

[2]Davis's *pro se* complaint is not a model of clarity in its description of this incident. His administrative grievance filings show that Davis was the inmate who complained about having low blood sugar, while his complaint could be read to suggest that Davis is claiming that it was another diabetic inmate who had a low blood sugar episode on this particular date. The description of the incident in the complaint, however, can be reconciled with the description of the incident in the grievance if one assumes that the inmate who handed Davis the honey packet was also an insulin-dependant diabetic who had experienced an episode of low blood sugar while on a public-works assignment.

his diabetic condition as a pretext for removing him from the public-works program. Davis further claimed that other similarly situated non-homosexual, insulin-dependant diabetic inmates were allowed to continue working in the public-works program.

Davis filed a grievance to contest the decision to remove him from the program. The grievance response stated that:

> While out on public works assignment, grievant complained of his "sugar" being low causing the PW [public works] Officer to return the PW group to the facility. Custody concerns of reoccurrence and disruption to the work group, possible security risk in the public by the remainder of the group while the officer is attending to grievant's medical condition caused the medical provider to restrict him to facility grounds work. Grievant admitted to HUM he is non-compliant with diabetic recommendation.

Davis filed an appeal of this initial (Step I) decision in Step II of the grievance process, asserting that it was not true that his condition forced the work detail to return to the correctional facility early and that he never admitted he was non-compliant with his diabetic recommendations. Despite these assertions, Davis's administrative appeals were denied.

Having exhausted his administrative remedies, Davis filed a *pro se* complaint in the district court, alleging that he was removed from his public-works position because he is homosexual, in violation of his rights under the First and Fourteenth Amendments, and naming Prison Health Services, Scharfnaar, Kast, Decline, and "John Doe[s]" as defendants. The district court screened the complaint pursuant to the Prison Litigation Reform Act and dismissed the complaint for failure to state a claim under 28 U.S.C. §§ 1915(e)(2), 1915A and 42 U.S.C. § 1997e(c). The district court dismissed Davis's equal protection claim on two grounds. First, the district court concluded that the claim failed under a rational basis review because Davis failed to identify other prisoners who were similarly situated in all relevant respects. The district court found that Davis failed "to identify any other diabetic prisoner who caused an incident requiring the work crew to return to the facility prematurely so that he could receive medical treatment," apparently crediting the grievance response's version of the incident and not Davis's

assertion that the work crew did not return to the facility early and that he finished his shift after receiving the honey packet. Next, the district court held that even if Davis had shown he was treated differently than other similarly-situated diabetics, Davis's claim was barred by the Supreme Court's decision in *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 603–05 (2008). The district court interpreted *Engquist* to bar all claims involving the application of rational basis scrutiny to employment decisions and other discretionary decision-making, and it found that *Engquist* applied to the "subjective discretionary decisions" made by prison officials in determining whether to employ particular prisoners on public-works crews.

## II.

This court reviews *de novo* a district court's decision to dismiss a complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010). The dismissal standard under these two statutes is the same standard that this court uses to evaluate dismissals under Federal Rule of Civil Procedure 12(b)(6). *Id.* at 470–71. A prisoner's *pro se* complaint is to be read liberally, *Stanley v. Vining*, 602 F.3d 767, 771 (6th Cir. 2010), and when judging the sufficiency of a complaint, this court "accept[s] as true all non-conclusory allegations in the complaint and determine[s] whether they state a plausible claim for relief." *Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 (2009)).

Davis argues that the district court erred in dismissing his complaint at the pleading stage because he has sufficiently alleged facts that, when taken as true, state a plausible claim that he was removed from his public-works employment because of the defendants' anti-gay animus. The defendants argue that the district court properly dismissed Davis's complaint because Davis has failed to plausibly allege that the defendants' decision to remove him from the program was not rationally related to a legitimate government purpose.

The Equal Protection Clause of the Fourteenth Amendment "protects against invidious discrimination among similarly-situated individuals or implicating

fundamental rights." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Because this court has not recognized sexual orientation as a suspect classification, Davis's claim is governed by rational basis review. *Id.* at 261. Under this test, a "'plaintiff may demonstrate that the government action lacks a rational basis . . . either by negativing every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will.'" *Id.* (quoting *Warren v. City of Athens*, 411 F.3d 697, 711 (6th Cir. 2005)). We have previously held that "the desire to effectuate one's animus against homosexuals can never be a legitimate governmental purpose, [and] a state action based on that animus alone violates the Equal Protection Clause." *Stemler v. City of Florence*, 126 F.3d 856, 873–74 (6th Cir. 1997).

In this case, Davis has alleged facts that, taken as true, state a plausible claim that the defendants removed him from the public-works program because of an anti-gay animus. He alleged that the public-works officers supervising his work crew treated him differently than other inmates, ridiculed and belittled him, and "ma[d]e a spectacle" of him when they brought him back to the correctional facility after a public-works assignment because of his sexual orientation. He further alleged that these officers did not want to strip search him because he was homosexual and would make "under the breath" remarks when selected to do so. These allegations directly support Davis's claim that the officers' actions toward him were motivated by an anti-gay animus.

Davis also claimed that the public-works officers were looking for a reason, "even if that reason was invalid," to have him removed from the public-works program in order to "eliminat[e] the need to have to deal with a homosexual" and claimed that the officers found just such a pretextual reason when he suffered what he believed at the time to be a diabetic episode while on a public-works assignment. Despite the fact that Davis returned to work after receiving a honey packet and finished the remainder of his shift, a public-works officer had Davis fill out a medical health care request and meet with a nurse upon his return to the correctional facility. Furthermore, in spite of the alleged facts that the episode had been a "false alarm," that Davis had previously been

medically cleared to participate in the program, and that he had never previously experienced a low blood sugar episode while on a public-works assignment, the prison health unit manager, Defendant Scharfnaar, ordered that Davis be removed from the public-works program.   Davis alleged that the public-works officers persuaded Scharfnaar, apparently either by colluding with her or providing her with false information about the incident, to use concerns about his diabetic condition as a pretext for removing him from the public-works program.  Finally, Davis asserted that there were similarly situated, non-homosexual, insulin-dependant diabetic inmates who participated in the public-works program and who were allowed to continue working in the program after this incident.  The combined effect of these alleged facts, taken as true at this stage of the litigation, lead us to conclude that Davis has stated a plausible claim that he was improperly removed from the public-works program based upon the defendants' anti-gay animus.  Dismissal of this claim was improper.  *See Johnson v. Knable*, 862 F.2d 314 (table), 1988 WL 119136, at *1 (4th Cir. 1988)) (holding that a prisoner stated a valid equal protection claim when he alleged he was denied a work assignment because of his sexual orientation).

The district court mistakenly relied on a description contained in the response to Davis's initial grievance, in which the grievance respondent stated that Davis's diabetic episode prompted the public-works detail to return to the correctional facility prematurely.  The district court relied on this account of the incident to conclude that Davis had "failed to identify prisoners who were similarly situated in all relevant respects" because Davis had not identified "any other diabetic prisoner who caused an incident requiring the work crew to return to the facility prematurely so that he could receive medical treatment."  But Davis expressly contested the version of events related in the grievance response and claimed that he was able to finish out the remainder of his shift and that the public-works detail did not return to the facility early.  The district court erred when it found that Davis merely suggested that the defendants "overreacted by taking him back to the facility," when Davis actually directly disputed this version of events.

Likewise, the defendants base their arguments in favor of affirming the dismissal of Davis's complaint on the version of events reported in the grievance response rather than on Davis's own factual allegations. They argue that the decision to remove Davis from the public-works program was rationally related to the legitimate government purpose of protecting Davis's health and the public at large and attempt to rebut Davis's allegations of anti-gay animus by asserting "as the Step I grievance [response] indicates, Davis'[s] situation presented a safety risk." The question of whether Davis was removed from the public-works program because of safety reasons or because of anti-gay animus, however, is the issue in dispute in this case, and the defendants' arguments are better suited for a motion for summary judgment.

At this stage of the proceedings, the district court was required to treat Davis's allegations—not the contested statements contained in the grievance response—as true. *See Delay*, 585 F.3d at 1005; *Hill*, 630 F.3d at 471. Because Davis alleged that his possible diabetic episode did not prompt an early return to the facility by the public-works detail, Davis is similarly situated to the non-homosexual, diabetic prisoners who, he alleged, were allowed to continue working in the public-works program. Thus, Davis's allegations, accepted as true, support an inference that the prison officials purposefully engaged in discrimination based upon his sexual orientation when they removed him from the public-works program, and his complaint adequately states a claim for relief.

Moreover, even if Davis had failed to include allegations about similarly-situated prisoners, his complaint still should not have been dismissed at the pleadings stage. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–12 (2002) (holding that plaintiffs alleging discriminatory treatment are not required to plead facts establishing a *prima facie* case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), because its burden-shifting framework does not apply in every discrimination case); *Johnson v. Johnson*, 385 F.3d 503, 530–31 (5th Cir. 2004) (holding that a gay prisoner alleging discriminatory treatment because of his sexual orientation was not required to identify any non-homosexual prisoners who were similarly-situated but treated better because the

complaint contained allegations that, if true, constituted direct evidence of discriminatory motive and animus). Davis's complaint likewise contains allegations that, if accepted as true, would constitute direct evidence that his removal from the public-works program was improperly motivated by anti-gay animus. By dismissing his claim because he had purportedly failed to identify any similarly situated prisoners, the district court mistakenly required Davis "to plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered." *Swierkiewicz*, 534 U.S. at 512.

In sum, Davis has alleged sufficient facts that, accepted as true, state a plausible claim for relief. Accordingly, Davis "deserves a shot at additional factual development, which is what discovery is designed to give him." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 281 (6th Cir. 2010). Dismissal under 28 U.S.C. §§ 1915(e)(2), 1915A and 42 U.S.C. § 1997e(c) for failure to state a claim was improper.

III.

The district court also found that Davis's claim was barred by *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008). The plaintiff in *Engquist* was a former state employee who brought "a 'class-of-one' equal protection claim, alleging that she was fired not because she was a member of an identified class . . . but simply for 'arbitrary, vindictive, and malicious reasons.'" 553 U.S. at 595. The Supreme Court held that the "class-of-one" theory of equal protection, which the Court recognized in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (*per curiam*), has no application in the public employment context. *Engquist*, 553 U.S. at 601, 607. The Court reasoned that for certain forms of state action involving "discretionary decisionmaking based on a vast array of subjective, individualized assessments," the general rule of equal protection that "people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted." *Id*. at 603.

The district court interpreted *Engquist* to preclude any claim involving the application of rational basis scrutiny to employment decisions and other discretionary

decision-making.  In doing so, the district court improperly grouped "class-of-one" claims with other types of claims subject to rational basis scrutiny.  The district court's confusion on this issue likely stems from language found in a case cited earlier in the district court's opinion, *Club Italia Soccer & Sports Organization, Inc. v. Charter Township of Shelby*, 470 F.3d 286 (6th Cir. 2006).  In *Club Italia*, this court stated that "[w]hen a plaintiff does not allege that the government's actions burden a fundamental right or target a suspect class, the plaintiff is said to proceed on a so-called 'class of one' theory and must prove that the government's actions lacked any rational basis."  *Id*. at 298.  The *Club Italia* formulation blended together the "class-of-one" concept and the standard of review for an equal protection claim that does not target a suspect class or burden a fundamental right—*i.e.*, rational basis review—to erroneously suggest that every claim subject to rational basis review is a "class-of-one" claim.  Although all "class-of-one" claims are subject to rational basis review, not all claims subject to rational basis review are "class-of-one" claims.

In typical equal protection cases, plaintiffs "generally allege that they have been arbitrarily classified as members of an 'identifiable group.'" *Engquist*, 553 U.S. at 601 (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).  When the identifiable group has been recognized as a suspect or quasi-suspect class, courts examine the classification under a heightened level of scrutiny.  *See, e.g., Regents of Univ. of California v. Bakke*, 438 U.S. 265, 290–91 (1978) (opinion of Powell, J.) (treating race as a suspect classification); *Craig v. Boren*, 429 U.S. 190, 197 (1976) (treating gender as a quasi-suspect classification).  When the identifiable group has not been recognized as a suspect or quasi-suspect class, courts examine the classification under rational basis review.  *See, e.g., Massachusetts Bd. of Ret. v. Murgia,* 427 U.S. 307, 312 (1976) (discrimination based on age).

In contrast, in "class-of-one" claims, "the plaintiff [does] not allege membership in a class or group" but rather simply "alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564.  "[T]he hallmark of [a 'class-of-one']

claim is not the allegation that *one individual* was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." *Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010); *see also Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily.").

A claim alleging discrimination on the basis of sexual orientation, such as Davis's, thus should not be characterized as a "class-of-one" claim. Although sexual orientation has not been recognized in this circuit as a suspect or quasi-suspect classification, homosexuals do constitute an "identifiable group" for equal protection purposes. *See Stemler*, 126 F.3d at 873–74. Other circuits have likewise held that gay people constitute an identifiable group in the equal protection context. *See, e.g., Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134–35 (9th Cir. 2003) ("The plaintiffs are members of an identifiable class for equal protection purposes because they allege discrimination on the basis of sexual orientation."); *Nabozny v. Podlesny*, 92 F.3d 446, 457 (7th Cir. 1996) ("[T]he Constitution prohibits intentional invidious discrimination between otherwise similarly situated persons based on one's membership in a definable minority, absent at least a rational basis for the discrimination. There can be little doubt that homosexuals are an identifiable minority subjected to discrimination in our society.").

Accordingly, we hold that Davis has not alleged a "class-of-one" equal protection claim because he has alleged that he was discriminated against because of his sexual orientation and not simply that he was arbitrarily treated differently from other inmates. Contrary to the language found in *Club Italia*, the fact that Davis's equal protection claim is to be evaluated under the rational basis standard does not automatically mean

that he has asserted a "class-of-one" claim.[3]  *Engquist* prohibits only "class-of-one" claims in the public employment context.  *Engquist*, 553 U.S. at 607.  Because Davis has asserted a traditional, class-based discrimination claim and not a "class-of-one" equal protection claim, *Engquist* does not bar his claim, and the dismissal of Davis's complaint on this basis was improper.

## IV.

After mistakenly determining that *Engquist* applied to Davis's class-based discrimination claim, the district court also concluded that *Engquist* applied to the "subjective discretionary decisions" made by prison officials in administering a public-works program.  The defendants argue that we should affirm this conclusion, while Davis urges us to limit the scope of *Engquist* to the public employment context or, at minimum, to contexts in which a state decision-maker's discretion is essentially unfettered.  Because Davis has not alleged a "class-of-one" claim, as discussed above, *Engquist* does not apply to his case.  As a result, it is not necessary for us to decide the issue of the proper scope of *Engquist* here, and we decline to do so.

## V.

For the reasons provided above, we reverse the judgment of the district court and remand the case for further proceedings.

---

[3]Because the *Club Italia* plaintiff brought a true "class-of-one" claim, the language in *Club Italia* that suggested that every equal protection claim subject to rational basis review was a "class-of-one" claim was not necessary to the holding in that case and, therefore, is properly considered non-binding dicta.  *See Club Italia*, 470 F.3d at 299 (observing that the plaintiff had not alleged any animus or class-based motive in its claim of discriminatory treatment).  Furthermore, even if the *Club Italia* formulation was not dicta and had any precedential effect, this erroneous formulation was necessarily overruled by *Engquist* when the Supreme Court reaffirmed its earlier decisions, such as *New York City Transit Authority v. Beazer*, 440 U.S. 568 (1979) (discrimination against class of methadone users), *Harrah Independent School District v. Martin*, 440 U.S. 194 (1979) (discrimination based on noncompliance with continuing education requirement), and *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307 (1976) (discrimination based on age), by holding that "class-based decisions in the employment context" can still be challenged. *Engquist*, 553 U.S. at 605.  Each of these cited examples of class-based discrimination in the employment context did not involve suspect or quasi-suspect classifications and, therefore, was subject to rational basis review.  Because non-suspect class-based employment discrimination claims are still allowed but "class-of-one" claims are no longer allowed in the employment context, it follows that the categories of "class-of-one" claims and claims subject to rational basis review are not equivalent.  To the extent that *Club Italia* (or any other of this court's precedent) suggests otherwise, it has been overruled by *Engquist*.