[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14943
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-00377-KD-B; 1:09-bk-11053

In Re:
MORRIS C. SEARS,

                                                                      Debtor.

_____

MORRIS C. SEARS,

                                                        Plaintiff - Appellant,

versus

UNITED STATES OF AMERICA,

                                                        Non-Party - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(August 20, 2013)

Before CARNES, Chief Judge, MARTIN, and FAY, Circuit Judges.

PER CURIAM:

Morris Sears appeals the district court's decision affirming the bankruptcy

court's order declaring that his debts to the United States arising out of ten surety

bonds are not dischargeable because he made false statements to induce the

government to accept him as a surety.

I.

Federal law requires contractors on certain federal construction projects to

provide performance and payment bonds to protect the government in case the

contractor defaults on his obligations.  See 40 U.S.C. § 3131.   Between October

2005 and November 2008 Sears, doing business as ABBA Bonding Company,

issued several surety bonds for various government projects.  Sears would

generally receive a four percent commission for issuing the bonds.

Sears was required to submit a separate Affidavit of Individual Surety in

which he pledged collateral to secure each of the bonds.  Those affidavits are one-

page form documents provided by the government.  Each affidavit contains the

following statement:

> I, the undersigned, being duly sworn, depose and say that I am:  (1)
> the surety to the attached bond(s); (2) a citizen of the United States;
> and of full age and legally competent. . . . I recognize that statements
> contained herein concern a matter within the jurisdiction of an agency
> of the United States and the making of a false, fictitious or fraudulent
> statement may render the maker subject to prosecution under title 18,

2

United States Code Sections 1001 and 494.  This affidavit is made to induce the United States of America to accept me as surety on the attached bond.

Below that statement, the affidavit provides that "[t]he following is a true representation of the assets I have pledged to the United States in support of the attached bond."  Below that are two subparts.  Subpart (a) asks the affiant to list "Real Estate (Include a legal description, street address and other identifying description; the market value; attach supporting certified documents including recorded lien; evidence of title and the current tax assessment of the property. . . .)"  For each of the affidavits at issue in this case, Sears filled in that section by listing "Investment Real Estate Properties with clear title" followed by some combination of the following properties:  (1) Lots 5, 6, 7, & 8 on Rosalia Ave., Lillian, Alabama, (2) 4719 Albatross Drive, Granbury, Texas, and (3) a property in Baton Rouge, Louisiana.  Sears failed to attach any of the supporting documents requested in subpart (a) in all of the affidavits.  Subpart (b) of that same section asks the affiant to include "Assets other than real estate (describe the assets, the details of the escrow account, and attach certified evidence thereof)."  On several of the affidavits at issue, Sears left that subpart blank, indicating that he was only pledging real estate for those bonds.  On others he referred to an attached "Financial Statement" and stated "ABBA Bonding Net Worth" followed by an estimation of $126,195,665.61.

3

The next section of the affidavit asks the affiant to "[i]dentify all mortgages, liens, judgements [sic], or any other encumbrances involving subject assets including real estate taxes due and payable." On each affidavit, Sears responded "None at this time." The affidavit also requires the affiant to "[i]dentify all bonds, including bid guarantees, for which the subject assets have been pledged within 3 years prior to the date of execution of this affidavit." On each affidavit, Sears responded, "0." Sears signed each of the affidavits and had them notarized.

Although the ten bond surety agreements at issue were approved by the government's contracting officers, the government later found out that Sears did not actually own the properties in Granbury, Texas or Baton Rouge, Louisiana and that he did not hold clear title to the Lillian, Alabama properties. Sears had also pledged properties more than once for his various bond issuances, despite his sworn statements to the contrary. And although Sears swore in his affidavit that ABBA Bonding had a net worth of over $120 million, he admitted at his 11 U.S.C. § 341 meeting that ABBA Bonding was never worth that much.

Sears performed his obligations as surety under nine of the bonds at issue, investigating the government's claims of contractor default and paying claims when required. After Sears filed for bankruptcy, one of the contractors for whom Sears was a surety defaulted on his contract, which triggered Sears' obligations under the surety agreement. Because Sears was already in bankruptcy, the

4

government could not collect under Sears' bond and was required to hire another contractor to finish the job at an additional cost and to pay a subcontractor whom the original contractor had failed to pay. The government filed a proof of claim for $1,055,724.10 in Sears' bankruptcy case for its losses caused by Sears' failure to perform under his bond.

In July 2009 the government filed an adversary proceeding challenging the dischargeability of Sears' debts to it, contending that Sears induced it to accept him as surety using false pretenses, false representations, or actual fraud under 11 U.S.C. § 523(a)(2)(A). The government also asked the bankruptcy court to declare as nondischargeable any debt Sears owes to the government for the commissions it paid to him for the ten surety bonds. Specifically, the government contended that those commissions should be refunded to it because the bonds it received were essentially worthless because they were not properly collateralized.

The bankruptcy court granted a judgment declaring that the debts Sears owed for the defaulted bond and for the commissions were nondischargeable. The court concluded that Sears made false representations with the intent to deceive the government, that the government relied on those misrepresentations, that the reliance was justified, and that the government sustained a loss as a result of Sears' misrepresentations. The district court affirmed the bankruptcy court's order.

II.

5

A debtor cannot discharge a debt for money "to the extent [it was] obtained by false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C. § 523(a)(2)(A). To prove that a debt is nondischargeable under § 523(a)(2)(A), a creditor must show that "(1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the misrepresentation." In re Bilzerian, 153 F.3d 1278, 1281 (11th Cir. 1998). "We review de novo the legal determinations of the bankruptcy court and the district court, but we review only for clear error the bankruptcy court's factfindings." In re Cassell, 688 F.3d 1291, 1294 (11th Cir. 2012) (citations omitted). A finding is clearly erroneous when, after reviewing all the evidence, the court is left with the definite and firm conviction that the finding was wrong. Merisier v. Bank of America, N.A., 688 F.3d 1203, 1211 (11th Cir. 2012).

## A.

Sears contends that the bankruptcy court clearly erred in finding that he intended to deceive the government. The court found that Sears' intent to deceive could be inferred from the volume and pattern of his misrepresentations. It pointed out that Sears repeatedly pledged property he did not own in support of his surety bonds and consistently misrepresented the state of the title of the properties he pledged as collateral. It also reasoned that Sears must have known that he was

6

pledging the same properties as bond collateral in affidavits executed within days or months of each other, despite the fact that he denied doing so in his affidavits.

Sears points out that he actually performed his obligations under some of those bonds and argues that his performance should "negate" the other evidence of his intent to deceive. We disagree. As the bankruptcy court reasoned, Sears made fraudulent misrepresentations so that the government would accept him as surety. The fact that he later fulfilled some of his obligations does not "negate" his initial intent to deceive. The bankruptcy court's factual finding that Sears intended to deceive the government is not clearly erroneous.

## B.

Sears contends that the bankruptcy court erred in concluding that the government's reliance was justified. "Justifiable reliance is gauged by an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case." In re Vann, 67 F.3d 277, 283 (11th Cir. 1995) (quotation marks omitted). "[I]t is only where, under the circumstances, the facts should be apparent to one of plaintiff's knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own." Id.

The bankruptcy court reasoned that the misrepresentations "were not apparent to the contracting officers" who reviewed Sears' affidavits because those affidavits were "completely filled out" and submitted under oath, as attested to by a notary.  Sears contends that the district court clearly erred in concluding that the affidavits were complete on their face.  He points out that the section of the affidavit that asked the affiant to list the pledged real estate was followed by a parenthetical statement requesting certain supporting documents, such as a recorded lien, evidence of title, and the current tax assessment of the property.  He argues that because he failed to attach the supporting documents, the affidavits were facially incomplete.

Although Sears failed to supply documents to support his sworn statements, it was not apparent from a "cursory glance" at his affidavits that they were fraudulent.  Sears answered every question on each of the affidavits, which were signed and notarized.  He listed the property to be pledged as collateral for the bonds.  When asked whether there were any liens, judgments, or other encumbrances on that property he responded, "None at this time."  When asked whether the property had been pledged in support of any other bonds, he indicated that it had not.  Given those facts, we cannot say that the bankruptcy court clearly erred in finding that the form affidavits submitted by Sears were completely filled out.

8

Moreover, Sears' own failure to provide documentation to support his fraudulent statements should not allow him to avoid his obligation to the party he lied to.  See, e.g., Marrama v. Citizens Bank of Mass., 549 U.S. 365, 367, 127 S.Ct. 1105, 1107 (2007) ("The principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor.") (quotation marks omitted) (emphasis added); In re St. Laurent, 991 F.2d 672, 680 (11th Cir. 1993) ("[T]he fraud exceptions to discharge exist to punish the debtor for committing fraud.").[1]

## C.

Sears contends that the government failed to show that its losses resulting from his default on one of the bonds were caused by his misrepresentations about the collateral supporting that bond.  He argues that the government's losses were caused by the failure of the contractor who defaulted, and not his own default on the bond.  He is wrong.  The purpose of a surety bond is to protect the government in the event the contractor defaults.  Although Sears was not obligated to perform until the contractor defaulted, his failure to perform when he became obligated to do so caused the government's loss.

---

[1] Sears also contends that the bankruptcy court clearly erred in finding that the government actually relied on his fraudulent misstatements.  He argues that any reliance on his "facially incomplete" affidavits would have been "utterly unreasonable," which undermines the deposition testimony of the contracting officers that they did in fact rely on the statements in Sears' affidavits.  As we have already discussed, the affidavits were not facially incomplete.  The bankruptcy court did not clearly err in crediting the testimony of the contracting officers that they did rely on the fraudulent statements in Sears' affidavits.

The bankruptcy court did not clearly err in finding that but for Sears' misrepresentations about the collateral supporting the bonds, the government never would have approved him as surety. And if he had never been approved as surety, then he could not have defaulted on the bond, causing the government to expend over one million dollars to hire a new contractor to complete the job and pay a subcontractor whom the original contractor had failed to pay.

D.

Sears also contends that the bankruptcy court erred in concluding that the four percent commissions that the government paid on each of the ten bonds constitutes an "actual loss." He notes that he did not default on nine of the bonds and argues that "[n]either the Government nor the lower courts cite any authority for the novel proposition that the payment of bond [commissions] to a surety, who undisputedly acts as surety and is obligated on the bonds, and in fact pays hundreds of thousands of dollars defending, settling and paying claims under his bonds, constitutes an actual loss merely because the bonds were not collateralized as expected."

For a debt to be nondischargeable under § 523(a)(2)(A), a creditor must show that it "sustained a loss as a result of the misrepresentation." In re Bilzerian, 153 F.3d at 1281. Although Sears made misrepresentations about the collateral supporting nine of the bonds at issue in this case, the government has not shown

10

that it suffered a loss as a result of those nine misrepresentations because Sears never defaulted on those bonds.  As the bankruptcy court noted, Sears "investigated, paid, attempted to pay, and/or defended many of the claims made pursuant to his bond issuances."  Because the government never had to look to the collateral supporting those nine bonds, Sears' misrepresentations concerning the collateral supporting those bonds did not cause the government any losses.

As for the bond on which Sears did default, it is clear that the government did suffer a loss as a result of Sears' misrepresentation.  The government paid over $1 million that it would not have had to pay if Sears had performed under the bond, and that amount clearly is not dischargeable under § 523(a)(2)(A).  The only question is whether the commission the government paid on that bond is also nondischargeable under that provision.  We conclude that it is.  The bankruptcy court concluded that the commission constituted a "debt" under § 523(a)(2)(A), and Sears has not challenged that ruling on appeal.  See § 523(a)(2)(A) ("A discharge . . . does not discharge an individual debtor from any debt . . . for money, property, services, or [credit], to the extent obtained by false pretenses, a false representation, or actual fraud . . . .") (emphasis added).  The Supreme Court has held that § 523(a)(2)(A) "bars the discharge of all liability arising from fraud," including "the value of any money, property, etc., fraudulently obtained by the debtor."  Cohen v. de la Cruz, 523 U.S. 213, 222, 118 S.Ct. 1212, 1218 (1998).

11

The four percent commission Sears received constitutes "money . . . fraudulently obtained by the debtor," as the government would not have accepted Sears as a surety and paid him a commission but for his false statements about the collateral supporting his bonds.[2]

We affirm the district court's judgment to the extent that it declared as nondischargeable the amount Sears owes under the defaulted bond and the commission paid on that bond, and we reverse the district court's judgment to the extent that it declared as nondischargeable the commission paid on the nine bonds for which Sears did not default.

**AFFIRMED IN PART, REVERSED IN PART.**

---

[2] Sears also contends that the government failed to prove that it actually paid the commissions for some of the bonds. After reviewing the parties' supplemental letter briefs on that issue, we conclude that the bankruptcy court did not clearly err in finding that the government paid the commissions, either directly or indirectly, for all of the bonds at issue in this case.