*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0309p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MICHAEL CLEMMER, individually and on behalf of
all others similarly situated,
                                        *Plaintiff-Appellant,*

    *v.*

KEY BANK NATIONAL ASSOCIATION,
                                        *Defendant-Appellee.*

No. 07-3936

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 06-02654—Patricia A. Gaughan, District Judge.

Argued: April 22, 2008

Decided and Filed: August 22, 2008

Before: GILMAN, ROGERS, and McKEAGUE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Robert K. O'Reilly, ADEMI & O'REILLY, Cudahy, Wisconsin, for Appellant. Michael N. Ungar, ULMER & BERNE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Robert K. O'Reilly, David M. Victor, ADEMI & O'REILLY, Cudahy, Wisconsin, for Appellant. Michael N. Ungar, ULMER & BERNE, Cleveland, Ohio, for Appellee.

    McKEAGUE, J., delivered the opinion of the court, in which GILMAN, J., joined. ROGERS, J. (p. 8), delivered a separate concurring opinion.

---

## OPINION

---

    McKEAGUE, Circuit Judge. As the district court succinctly summarized, this case turns on whether the Electronic Funds Transfer Act (the "EFTA") permits an automated teller machine's on-screen notice to read that a fee "may" be charged when a fee "will" be charged. *Clemmer v. Key Bank, N.A.*, No. 06-2654, 2007 WL 5303533, at *2 (N.D. Ohio June 20, 2007). Michael Clemmer, a consumer of ATM services, argues that the notice must explicitly state that a consumer "is" or "will be" (or some variant thereof) charged a fee. The district court, however, concluded that use of the less definite "may" coupled with the more definite requirement that a user press "yes" to accept the fee to continue the transaction put the user on sufficient notice that a fee would be

1

incurred.  We agree, and affirm summary judgment in favor of Key Bank National Association ("Key Bank").

# I

## A.        The Electronic Funds Transfer Act

The federal government enacted the EFTA as part of the comprehensive Consumer Credit Protection Act (the "CCPA"), Pub. L.  No. 95-630 § 2001, 92 Stat. 3641 (1978) (codified as amended at 15 U.S.C. § 1601 et seq.).   The EFTA protects individual consumer rights by "provid[ing] a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems." 15 U.S.C. § 1693(b).  One of the EFTA's provisions requires that operators of automated teller machines ("ATMs") provide notice of fees charged to consumers. Specifically, 15 U.S.C. § 1693b(d) states in relevant part:

> (3) Fee disclosures at automated teller machines
>
>> (A) In general
>>
>>> The regulations prescribed under paragraph (1) shall require any automated teller machine operator who imposes a fee on any consumer for providing host transfer services to such consumer to provide notice in accordance with subparagraph (B) to the consumer (at the time the service is provided) of--
>>>
>>>> (i) the fact that a fee is imposed by such operator for providing the service; and
>>>>
>>>> (ii) the amount of any such fee.
>>
>> (B) Notice requirements
>>
>>> (i) On the machine
>>>
>>>> The notice required under clause (i) of subparagraph (A) with respect to any fee described in such subparagraph shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer.
>>>
>>> (ii) On the screen
>>>
>>>> The notice required under clauses (i) and (ii) of subparagraph (A) with respect to any fee described in such subparagraph shall appear on the screen of the automated teller machine, or on a paper notice issued from such machine, after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction . . . .
>>
>> C) Prohibition on fees not properly disclosed and explicitly assumed by consumer

> No fee may be imposed by any automated teller machine operator in connection with any electronic fund transfer initiated by a consumer for which a notice is required under subparagraph (A), unless--
>
> > (i) the consumer receives such notice in accordance with subparagraph (B); and
> >
> > (ii) the consumer elects to continue in the manner necessary to effect the transaction after receiving such notice.

The EFTA defines an "automated teller machine operator" as a person who operates an ATM and "is not the financial institution that holds the account" of the consumer using that ATM. 15 U.S.C. § 1693b(d)(3)(D)(i).

The EFTA grants to the Board of Governors of the Federal Reserve System (the "Board") the authority and responsibility to "prescribe regulations to carry out the purposes" of the act. *Id.* § 1693b(a). The Board has implemented various administrative regulations codified at 12 C.F.R. § 205 ("Regulation E"). On the issue of ATM notice, Regulation E provides:

> (b) General. An automated teller machine operator that imposes a fee on a consumer for initiating an electronic fund transfer or a balance inquiry shall:
>
> > (1) Provide notice that a fee will be imposed for providing electronic fund transfer services or a balance inquiry; and
> >
> > (2) Disclose the amount of the fee.

12 C.F.R. § 205.16. The regulation has different requirements for on-machine and on-screen notices. The on-machine notice must alert a potential consumer that:

> > (i) A fee will be imposed for providing electronic fund transfer services or for a balance inquiry; or
> >
> > (ii) A fee may be imposed for providing electronic fund transfer services or for a balance inquiry, but the notice in this paragraph (c)(1)(ii) may be substituted for the notice in paragraph (c)(1)(i) only if there are circumstances under which a fee will not be imposed for such services . . . .

*Id.* § 205.16(c)(1). The on-screen notice must notify the consumer that a fee will be imposed and the amount of the fee before the consumer commits to paying the fee. *Id.* § 205.16(c)(2).

## B.    Factual Background

Key Bank is a federally chartered bank that conducts business in the United States. As a part of its banking services, Key Bank operates ATMs, which permit both Key Bank customers and non-customers to conduct transactions. While Key Bank customers can use the bank's ATMs free of service fees, the bank usually assesses fees on non-customers who use the ATMs. After a non-customer places the card into a Key Bank ATM and enters the personal identification number, the following message appears on the screen:

This terminal may charge a fee of $2.00 for a cash withdrawal.  This charge is in addition to any fees that may be assessed by your financial institution.

Do you wish to continue this transaction?

    If yes press to accept fee

    If no press to decline fee

However, Key Bank does not actually charge a fee to all non-customers who receive this message and accept the fee.  For example, Key Bank does not charge a fee to certain members of the military, customers of affiliated banks, non-customers conducting international transactions, and non-customers using the Key Bank ATM at the Cleveland Clinic.  As Charles M. Scavelli, Key Bank's ATM channel manager, testified during his deposition, only after a non-customer accepts the fee does the Key Bank ATM ascertain whether that person should actually be charged a fee. Scavelli Dep. at 14, 65.

Michael Clemmer is not a Key Bank customer.  On November 4, 2005, Clemmer withdrew $20 from a Key Bank ATM in Rocky River, Ohio.  When prompted by the on-screen message, Clemmer selected "yes," received his $20, and Key Bank charged him a fee of $2.

Clemmer sued Key Bank in the Northern District of Ohio on behalf of himself and all others similarly situated.  He asserted two claims: Count I, failure to provide sufficient on-screen notice, in violation of 15 U.S.C. § 1693b(d)(3) and 12 C.F.R. § 205.16; and Count II, unjust enrichment, in violation of Ohio common law.  After permitting limited discovery, the district court granted Key Bank's motion for summary judgment on both counts and denied Clemmer's motion for partial summary judgment. *Clemmer*, 2007 WL 5303533, at *5-6.

This appeal followed.

**II**

We review de novo the district court's grant of summary judgment. *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 619 (6th Cir. 2006), *cert. denied*, 127 S. Ct. 2100 (2007).  Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  To survive summary judgment, the non-movant must provide evidence beyond the pleadings "set[ting] out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

In addition to the EFTA, the CCPA includes several other consumer-protection statutes, including the Truth in Lending Act (the "TILA"), 15 U.S.C. §§ 1601-1667f, and the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x.  With the common purpose of each statute to protect consumers with respect to financial credit, courts draw upon case law interpreting one statute for persuasive authority for another statute. *See, e.g.*, *Johnson v. W. Suburban Bank*, 225 F.3d 366, 379 (3d Cir. 2000) (finding class-action provisions in the TILA and the EFTA to have the same meaning because the court did "not believe that Congress would have different intended meanings for identical statutory language contained in similar statutes").  The EFTA, like the TILA and other CCPA provisions, is a remedial statute accorded "a broad, liberal construction in favor of the consumer." *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 163 F.3d 948, 950 (6th Cir. 1998) (citations omitted).  "Unless demonstrably irrational, Federal Reserve Board staff opinions construing" the EFTA or Regulation E "should be dispositive." *Id.*

Clemmer's primary argument on appeal is straightforward: the EFTA and Regulation E both require a definite statement on the screen to the effect that a fee "is" or "will be" charged if Key Bank in fact charges a fee to a non-customer using its ATM. Beyond the language of the statute and regulation, 15 U.S.C. § 1693b(d)(3)(A)(i) ("is"); 12 C.F.R. § 205.16(b)(1) ("will be"), Clemmer finds additional support from an inference-by-omission: because Regulation E explicitly authorizes the indefinite "may" for on-machine notice but does not likewise authorize such language for on-screen notice, the regulation implicitly prohibits a "may" notice on the screen. This makes sense, according to Clemmer, because the on-machine notice must account for overall ATM usage while the on-screen notice can be transaction specific.

We take no position on whether the Board properly exercised its discretion under the EFTA by permitting a "may" notice for ATM machines. We do, however, reject Clemmer's argument that any use the term "may" on the screen necessarily causes the on-screen notice to be deficient.

"As in all statutory construction cases, we begin with the language of the statute." *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002). On a plain reading, neither the EFTA nor Regulation E requires that particular language be used on the ATM screen. Nowhere in the statute or regulation is there a specific phrase in quotation marks for the on-screen message, nor is a model message provided. *Compare* 15 U.S.C. § 1693b(b) (requiring that the Board promulgate "model clauses" for use in disclosures of terms and conditions for certain transactions under § 1693c), *with id.* § 1693b(d)(3) (absence of any requirement that the Board issue model clauses regarding on-machine or on-screen notice). In fact, neither the statute nor the regulation expressly prohibits an ATM operator from using the term "may" in the on-screen message. Rather, before an ATM operator can charge a consumer a fee for a particular ATM transaction, that consumer must: (a) be informed that the bank will charge a fee for the transaction; and (b) agree to pay the fee. Clemmer admits that a statement like "Key Bank *charges* a $2.00 fee" would comply with the statute and regulations. Appellant's Br. at 21 (emphasis in original). Thus, the on-screen message must give a consumer who is charged a fee definite notice of the fee, but no particular word or phrase is either required or precluded.

Clemmer argues that the on-screen message must convey to "a certainty that the [consumer] will be charged a fee." *Id.* Clemmer argues, in essence, that the on-screen message can be neither under-broad (failing to notify a consumer who is actually charged a fee) nor over-broad (notifying a consumer of a fee that is not actually charged). In support, he directs us to a statement made by the Board to explain recent changes to its regulations. In the January 2006 *Federal Register* notice of the revised final rule and official staff interpretation regarding on-machine notice, the Board explained in the preamble:

> The final rule clarifies the two-part disclosure scheme established in Section 904(d)(3)(B) of the EFTA. The first disclosure, on ATM signage posted on or at the ATM, allows consumers to identify quickly ATMs that generally charge a fee for use. This disclosure is not intended to provide a complete disclosure of the fees associated with the particular type of transaction the consumer seeks to conduct. Until a consumer uses his or her card at an ATM, the ATM operator does not know whether a surcharge will be imposed for that particular consumer. Rather, it is the second, more specific disclosure, made either on the ATM screen or on an ATM receipt, that informs the consumer before he or she is committed to the transaction whether, in fact, a fee will be imposed for the transaction and the amount of the fee. Thus, consumers who are charged a fee would not be adversely affected by a general notice that a fee "may" be imposed because they will have the opportunity to terminate the transaction after receiving the on-screen notice or receipt containing the transaction-specific disclosure.

71 Fed. Reg. 1638, 1656 (Jan. 10, 2006). Indeed, the district court appears to have read the phrase "whether, in fact, a fee will be imposed" to imply that an ATM screen must provide "flawless transaction-specific notice." *Clemmer*, 2007 WL 5303533, at *5 n.1. A "flawless" notice requirement would brook no error, either an under- or an over-broad message.

We are not, however, confronted with both types of purported error in this lawsuit. Neither Clemmer nor any of the members of the class he seeks to represent is in the over-broad category—none of them were allegedly notified of a fee but not actually charged a fee. Under the facts alleged in the complaint, neither Clemmer nor his purported class has standing to raise the hypothetical claim that notice was incorrect because a fee was not charged.[1]

Thus, Clemmer's EFTA claim boils down to the following: did he, as a non-Key Bank customer who was actually charged a fee by the bank, receive sufficient on-screen notice of that fee? The answer is clear: by stating that he may be charged a fee, and then asking him whether he accepted the fee and wished to proceed, Key Bank effectively notified Clemmer that it would charge him a fee for the transaction. The on-screen message did not state that if he pressed "yes" he would only be likely, probably, or provisionally accepting the imposition of a fee. The statement is clear and declarative: if Clemmer pressed "yes," he accepted that he would have to pay a fee. Clemmer is correct that the law required Key Bank to give him sufficient on-screen notice that he would incur a fee; he is only incorrect in asserting that he did not receive such notice.

Clemmer's remaining arguments also fail. He points us to a number of district court decisions involving ATM fee notice. The decisions are not, however, relevant or persuasive here because they either involve on-machine notice, not on-screen notice, *see Brown v. Bank of Am., N.A.*, 457 F. Supp. 2d 82 (D. Mass. 2006); *Morrissey v. Webster Bank, N.A.*, 417 F. Supp. 2d 183 (D. Mass. 2006), or issues of on-screen notice not relevant here, *see Polo v. Goodings Supermarkets, Inc.*, 232 F.R.D. 399 (M.D. Fla. 2004) (denying class certification); *Mowry v. JP Morgan Chase Bank, N.A.*, No. 06-C-4312, 2006 WL 2385296 (N.D. Ill. Aug. 11, 2006) (alerting counsel to be prepared to discuss at a status hearing questions about the adequacy of on-screen notice). The requirements for on-machine notice differ from those for on-screen notice. It is undisputed that a consumer must receive some definite message on the ATM screen that a fee will be charged before the operator can charge a fee to that consumer. The different scenarios under which it might be permissible for on-machine notice to be less definite are irrelevant to the present case.

Clemmer also argues that the on-screen notice provision is a strict-liability requirement. *See* 15 U.S.C. §§ 1693b(d)(3), 1693m(a). True enough, *see Bisbey v. D.C. Nat'l Bank*, 793 F.2d 315, 318-19 (D.C. Cir. 1986), but that simply means that Clemmer need not prove that Key Bank acted in bad faith or that he subjectively believed that Key Bank would not charge him a fee, *cf. Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004). To make out his prima facie case, Clemmer must still show that Key Bank's on-screen message failed to notify him that a fee would be charged for his transaction, which he has failed to do.

Thus, because Key Bank provided sufficient on-screen notice of the fee it charged Clemmer, we affirm summary judgment in favor of the bank on Clemmer's EFTA claim (Count I). As for his unjust enrichment claim (Count II), Clemmer predicated that claim on Key Bank's alleged

---

[1] Arguably, the EFTA permits an on-screen message to be over-broad, meaning that a user could get notice that he is to be charged a fee, but then not actually be charged the fee. The imposition of a fee appears to be a precondition for a violation of § 1693b(d)'s notice requirements. *See* 15 U.S.C. § 1693b(d)(3)(A) (providing that an ATM operator cannot impose a fee on "any consumer" unless "such consumer" is notified that a fee will be imposed and agrees to the fee); *id.* § 1693b(d)(3)(B) (referencing the notice required under subparagraph A), (C) (prohibiting an ATM operator from imposing a fee unless the notice requirements satisfied); 12 C.F.R. § 205.16(b).

enrichment from the ATM fee imposed in violation of the EFTA. Without a violation of the EFTA, Clemmer's claim of unjust enrichment necessarily fails.

### III

Accordingly, for the reasons provided above, we AFFIRM summary judgment in favor of Key Bank on both counts of Clemmer's complaint.

---

**CONCURRENCE**

---

ROGERS, Circuit Judge, concurring.  I concur, but my reasoning differs a little from that of the majority.  In my view, the statutory language, 15 U.S.C. § 1693b(d)(3)(A) & (B)(ii), does not preclude Key Bank from charging a fee following an on-screen notice that the ATM-user is *subject to a fee charge*, even if the fee may in actuality not be charged to some classes of users.  The relevant statutory language is identical to language regarding on-machine notice, *see id.* § 1693b(d)(3)(A) & (B)(i), as to which the regulations explicitly permit such qualified notice, 12 C.F.R. § 205.16(c)(1)(ii).  Because the on-screen notice in this case clearly notified Clemmer that he was subject to a charge, it is not necessary for us to determine whether the on-screen message told him that he would in fact be charged.  It is also not necessary for us to determine whether the Commissioner could by regulation impose a flawless notice requirement for on-screen messages.